I want to limit my argument this morning to the point that Form F attached to the policy provided an independent basis for the duty to defend. The purpose, text, and policy behind Form F is that it provides coverage for bodily injury and property damage for commercial motor carriers by overriding every exclusion and limitation in the underlying policy. The key, I think, to the dispute between us and National is that they rely on policy and we rely on contract law that construes the text of what they issued. The text of Form F says that it amends the policy in order to provide insurance for automobile bodily injury or property damage in accordance with the provision of such laws or regulations to the extent coverage and limits of liability are required. That's the, all that's required to satisfy that is bodily injury, use or operation arising from the use or operation of a commercial vehicle. The problem is that it is used not to satisfy the general financial security which is under Chapter 601 of the Transportation Code. That just applies to every pickup truck, car, on the road, motorcycle. Motor carriers are treated different. They have a completely separate law which is Chapter 643 of the Transportation Code. And if you look at the beginning provisions of that, which are 643.101 and .102, they say nothing about that it's limited to or that it is for the benefit of third parties like shippers, other motors on the highway. That is missing from that text. Now, the policy, as everyone who has ever addressed a Form F case says, the way this policy works, the language I just quoted, is that it takes out of the underlying policy all the exclusions and all the limitations. For example, the exclusion they're relying on for employee-related occupational injuries. It also takes out of things like if you have an underlying policy that says only scheduled vehicles are covered, it takes that out. If you own a commercial motor vehicle, then the Form F will pick it up even if it's not scheduled. Now, the cases that we relied on are one from Georgia and one from Oklahoma. The one from Oklahoma, Casualty Reciprocal v. Sulfan, was one about employee injury. And there, the state agency responsible for promulgating the forms that apply to motor carrier employee injuries at all. And the question that went to the Supreme Court answer was, did they have authority to do that? And the answer was, no, you don't. Because the Motor Carrier Safety Responsibility Act doesn't talk about protecting only the public or only third parties of that. It just says you have to have a safety responsibility policy and therefore the agency exceeded its authority by inserting into what would have been their Form F an exclusion. Then there is the Driscoll case out of Georgia which didn't involve that injury to employee. The defense there was that the truck involved in the accident was an unscheduled vehicle and that this was not a permissive user, both of which would deny coverage under the basic policy. Nonetheless, the court there said Form F provided an independent duty to defend the motor carrier against the claim even though it was an unscheduled vehicle, even though it might have, even though there was a claim that he was not, the driver of the truck was not a permissive user. In that case, the carrier actually then at that point in the argument says, wait a minute, Form F is just for the benefit of the public, not the motor carrier. Finding a duty to defend benefits no one except the motor carrier, to which the court said, no, that's what you agreed to do. Public policy will not overcome the fact that you agreed to undertake the defense for that. So the problem here is that everyone who has addressed these issues says Form F gets rid of all the exclusions in the underlying policy. Now, they then turn, National relied on two cases to say, no, public policy will. And the first one that they cite was the rural trash case, which even they concede now really is not a valid precedent because it was later withdrawn. And the reason it was withdrawn was that the insured didn't know, didn't get notice of submission date. But the real problem there was that nobody argued an independent duty under Form F covered the accident. Rather, the insurance company was arguing that there was a basic exclusion similar to the one in their policy for employees and that the other side was claiming that their driver was an independent contractor, which then took it out of the exclusion. And so they said, well, we're going to use Form F as a conduit to somehow borrow the Federal Motor Carrier Act's definition of employee, which included independent contractors. Well, after the, and that was what the opinion addressed. And so what happened after that was, after the summary judgment was pulled down, lo and behold, the insurance said, hey, he is our employee. We're not arguing that. We will agree that he is our employee. The question is whether he was in scope and course. And that's the way the case wandered on. But then they the underlying case disappeared and it went off. And so the case was dismissed. Then there's the Bachiksa case. I think that's the way you pronounce it out in New Mexico. And there the court decided that the New Mexico Motor Carrier Safety Responsibility Act stated that it was only for the benefit of the public and that in determining the adequacy of the security that was offered, they would be, the administrative agency should consider the shipper, that it will protect the shippers and passengers of the carrier. And they said based on that, we don't think our, a form F is required to cover employee employment related injuries. Well, that's not like our statute in this case. Now, instead, they then turn to a provision in the basic financial security law under Chapter 601. That's the one for everybody else. And that's 61075, which talks about prohibited, prohibited terms and the ordinary financial responsibility. And what they talk about is subsection 2, which says you can't cover bodily injury if benefits for the injury are payable or required to be provided under workers' compensation law. The problem is, once again, motor carriers are required, requires, says a commercial motor carrier will have either workers' compensation coverage for their employees or accident insurance. Accident insurance is not workers' comp law. So for what, since we are given the option, the motor carrier is given the option one or the other, 61075 doesn't apply because, in effect, we're not required to have workers' comp. We can satisfy it with accident insurance. And even so, the Guerrero case, which I've cited in my brief, it's a Texas case, says that the provision in the State Motor Carrier Act basically gives the motor carrier an option. It can do one or the other. It doesn't have to carry comp. So then they turn to that statute itself. Well, once again, all it says is the have either workers' comp or accident insurance. It doesn't say what happens if they don't. It doesn't criminalize not having it. It doesn't say we'll come in and shut you down, take away all your trucks until you cover your employees. Under Texas law, the basic workers' comp is in the labor code. And under the labor code, the public policy is workers' comp is voluntary. But as the incentive to get you to have workers' comp, if you are required to have it and don't have it, you lose a lot of your affirmative defenses and a personal injury suit. That's all. That's the only penalty. Nothing in the State Motor Carrier Safety Responsibility Act says if you don't get comp or you don't get an accident insurance, then with no other policy you buy, even if it says it covers employees, covers you for liability against employee injuries. If you don't do that, that policy is out the window. We'll just read it out of the policy. And I think the other answer is if that's what the state agency that covers this, I think it's the Department of Motor Vehicles, wanted, they could do what the feds do with MCS 90. The federal regulations dictate the terms of the MCS 90 and they require, and it's in the MCS 90 form expressly, that it will not cover employment-related injuries to employees. That's not in this one. And I think that's important. I think what's really here, and when you get to the tail end of the brief, what their real problem here is, is that they say that why it offends public policy is it somehow transfers the burden of employment-related injuries to them. Well, it doesn't. Because if you read the rest of the opening paragraph, it says that if the only reason you are paying the loss is because of Form F and you wouldn't have to otherwise under the policy, then RIADA has to reimburse you. It gives them an indemnity claim back against us for whatever they would have to pay if this were to happen. I'm about to hit the two-minute mark in my prepared remarks, so unless there are questions about this or some other part of the argument, I will sit down. Thank you, Counselor. Bradley. Yes, Your Honor. May it please the Court, I'm Beth Bradley. I'm here for the APLE, National Liability Insurance Company. I understand that RIADA has chosen to focus their comments on Form F, but I want to back up a little bit because this case does involve two distinct issues. One, does the policy actually afford coverage for this lawsuit? And then second, if the policy does not afford coverage, does Form F come into play to require that national liability pay anyway and then seek reimbursement from RIADA? So turning to the first one, does this lawsuit actually fall within the policy coverage? Texas starts with an eight-corners rule. Looking at the allegations, Mr. Ochoa alleges he was in the course and scope of his employment with RIADA. He alleges that the tractor-trailer rig that was furnished to him by RIADA was defective and caused a crash, and he alleges that it was furnished to him to drive, by the way. He also alleges that RIADA is a non-subscriber to workers' compensation. RIADA does not appear to dispute that he was an employee or that they were a non-subscriber. Obviously, liability is very much in dispute. National liability issued a basic commercial auto policy. The policy includes two significant exclusions. One is an exclusion for injury to an employee in course and scope or while performing duties for the employer. The other is an exclusion for obligations under workers' compensation. That doesn't apply where RIADA is a non-subscriber, but it's important to know that it's in the policy. So the policy format is to separate out liability coverage from obligations to employees. Both of those exclusions have been broadly upheld by courts in Texas and elsewhere, so on the face of the pleadings in the policy, it appears that there is no coverage. So then you get to the question of whether Form F applies. Form F is a statutorily required endorsement when a policy is certified as proof of financial responsibility, and a carrier doesn't have to have a policy. They can seek to self-insure, in which case they have to certify their own financial responsibility based on their own assets rather than their policy. Either way, Form F is an endorsement that's used across the states. There is the federal MCS-90 that is the federal equivalent that is used for interstate transportation, and then Form F is used by various states for interstate transportation, and that's what we have here. So the Form F has very limited language, and it basically says that it applies but only to the extent of the coverage and the limits required by statute. So essentially it's defined by statutes, not by its own terms, unlike the policy itself. Liability coverage for employees is not required within the context of the Form F itself, so that would have to fall within a where we part ways. RIATA has argued that it takes all provisions out of the policy so it affords coverage for basically anybody who sues RIATA. We contend that the statutory scheme does not do that. There are relevant Texas statutes. They're found under Title VII of the Texas Motor Carrier Registration. It's not actually a Motor Carrier Act, and I would note that the Motor Vehicle Safety Responsibility Act is also found in Title VII. They're just in different subchapters. Section 643.101 requires that a carrier who is registering must provide liability insurance for each vehicle. Section 643.103 provides that a carrier who is registering must provide evidence of insurance or financial responsibility if it chooses to be self-insured. Section 643.106, entitled Insurance for Employees, says that a motor carrier required to register shall protect its employees by obtaining worker's comp or accidental insurance coverage with the required limits. Now, some of the limits and the terms are not set forth in the Transportation Code. You have to refer to the Texas Administrative Code, and under 43 Texas Administrative Code, Section 218.10, it says these provisions set forth the minimum insurance requirements and the minimum worker's compensation requirements, and they treat them in separate provisions. Section 218.16, subpart A, sets out the liability insurance requirements, bodily injury and property damage. Section C sets out the worker's compensation and accidental insurance requirements and limits. So there's two separate provisions within the Code, one that pertains to bodily injury and property damage liability, which is what Form F addresses, and one that applies to worker's compensation or accidental insurance. There's also the Motor Vehicle Safety Responsibility Act, which is not limited to motor carriers, that does have the provision entitled Insurance for Employees, I'm sorry, excuse me, that has provision 601.075 that prohibits, specifically prohibits insuring liability that is covered under the worker's compensation law or that is for bodily injury to an employee. There are Texas cases, West and Robertson are two that are discussed on page 10 of our brief that talk about the obvious intersection between that prohibition against insurance and the policy language that specifically excludes coverage for those exact things, worker's compensation obligations and bodily injury to an employee. So there's nothing in Title VII that requires that a liability policy be certified to cover an employee injury, and that's actually what RIADA seeks. To the contrary, everything in Title VII says that there's separate insurance obligations. The carrier has to have liability insurance for property damage and bodily injury in required limits, and the carrier has to have worker's compensation or accidental injury insurance to protect its employees. And this is a little different than Texas law as a whole, because Texas law as a whole does make worker's compensation optional. We are now the only state in the country that makes it optional. But the motor carrier provisions do say if you don't provide comp, you have to provide accidental insurance. You need to something to protect your employees. Now, what's going on here is that RIADA then seeks to say, well, we didn't do that. And as a matter of fact, because we didn't do it, we lost all of our common law defenses because we're a non-subscriber to worker's compensation. But what we think is we should pass that obligation on to our insurer, because it's an obligation that we have, and if we become liable to Mr. Ochoa, that should be falling under Form F. And yes, it's true that there is a reimbursement provision, but that requires that after RIADA loses its defenses, if it potentially loses the case and is found liable, the national liability has to pay something not contemplated by the policy and not contemplated, excuse me, by the statutes, and then has to chase RIADA and hope that it is solvent enough to reimburse it. In our estimation, that is not what the statutes require. Form F is limited to the extent of the statutes and the insurance required therein, and everything about this suggests that that would be entirely contrary to the statutory scheme and to the public policy set forth in those statutes. There are a couple other arguments that, if I had time, I wanted to address that are in the what-if arguments. RIADA has argued, well, what if Mr. Ochoa was a temporary employee? There is no allegation he was a temporary employee. Texas law and construction of policies and pleadings would suggest that the court should not imagine factual scenarios that are not alleged, but we have introduced evidence with our summary judgment motion in the district court that provided extrinsic evidence of W-2s that showed that, in fact, Mr. Ochoa was employed for a period of two years and that he was employed directly by RIADA. The temporary employee provision comes in because the definition of employee under the policy says that it does not include temporary employees, and it defines temporary employees as short-term or seasonal employees. We have argued back and forth, do we need extrinsic evidence? Can we rely on extrinsic evidence? It is our position that on the face of the pleadings, there is no coverage, but if you buy into the argument that any time someone asserts that they're an employee, there is an implicit suggestion that they might be a temporary employee, then we would be entitled to use extrinsic evidence under the standard set forth in the Bitco versus Monroe Guarantee case because it doesn't conflict with the rest of the case. It's a coverage-only fact, and it would be conclusive as to coverage. RIADA has also suggested that because of what I would call the sloppy pleading of Mr. Ochoa, because in his damages provision, he also asserts that maybe the driver was negligent, that perhaps Mr. Ochoa was not actually the driver, he was the passenger. There's no evidence of that. There's no actual allegation of that, and it doesn't matter. He still asserts that he was an employee, and he was in course and scope, so we get back to the same place under the policy. Now, as to the Form F provisions, RIADA has talked a little bit about the case law. The Oklahoma case, the Sutkin case, we cited that in the court below just under our obligation to cite anything that could potentially be considered adverse authority. It's kind of an interesting case from a historical perspective, but I would call it a relic. It's from 1945. It had to do with what was then in Oklahoma, the Form E. It was a 5-4 split in the court, and there was a lot of heated discussion at that time about how broad the Oklahoma workers' compensation statute was and whether employees of motor carriers were or were not falling within the workers' compensation statute, and it was actually backwards. In that one, the Form E, like the Form F here, actually purported to exclude employees, and the question was whether they could do that. So it is an interesting case. I don't think it's controlling. The Bachika case that we have cited from New Mexico is obviously not controlling. It's not Texas. However, I do think that the arguments and the discussion in that case are compelling. The major distinction that RIADA has pointed to is that in that case, they didn't talk about liability insurance, and there is a lead-in to the New Mexico statute that's not present in the Texas statute that talks about the significance of public liability insurance. The court did make a significant point in that case, though, that motor carrier employers and their employees share a relationship which is decidedly different than those of the other Texas statutes. The relationship between employers and employees is decidedly different than that between a motor carrier and the public. They've also asserted that the MCS 90 cases are irrelevant because MCS 90 has a specific exclusion for employees. It does. We don't dispute that, but we think the cases are still even though it does not have the same language and it does not have as many terms because it adopts statutes state by state depending on what state it is complying with. But the cases construing both the MCS 90 and the Form F endorsements recognize that the main purpose is to be a safety net for the public and to protect the public and the motorists injured by motor carriers when there may be no coverage otherwise, that its insurance of resort and that the insurance company is acting as a surety, guaranteeing protection to the public if the motor carrier cannot pay. Those cases are discussed on page 20 of our brief and include the National Casualty v. Lane case, which is from the Dallas Court of Appeals and is discussing a Form F. The Lancer v. Shelton case from the Fifth Circuit, which is v. Larson intermodal case, also a Fifth Circuit case, which is discussing the MCS 90, and the language is strikingly similar as to the purpose of that requirement. Rada has also discussed the Driscoll case. Driscoll case, as they've pointed out, did not involve an employee injury. The court was looking at other provisions. It did note, however, that Form F is not for the benefit of the motor carrier, who hasn't paid for it, but is for the sole benefit of the members of the public. And this is our point. Rada bought a liability policy. It does protect them from bodily injury and property damage liability. Form F does supersede any other exclusions or the failure to schedule a vehicle, which was the case in Lane. They didn't schedule that vehicle. However, what it does not do is substitute for their statutory requirement to provide workers comp or accidental injury insurance, and it should not be construed to transfer that risk to national. That is a risk that under statute is insurance that shall be provided by Rada, the employer. That's not the purpose of Form F. It's not consistent with the statutory scheme, and it would run counter to public policy because it would allow them not to provide that insurance and to have a safety net, and that is not what is intended. One other issue, although not discussed in the argument today, is whether national is entitled to a determination of indemnity as well as defense. Under Texas law, indemnity is often reserved and cannot be determined in a declaratory judgment action. There is an exception, however, when the same facts that would preclude defense also preclude indemnity. We would submit that this is exactly that case. Mr. Ochoa has alleged he was an employee in Corson Scope. As an employee in Corson Scope, there's no defense obligation under the policy. For the same reason, there's no indemnity obligation under the policy. We conclude Form F does not apply and should not apply here, so a determination as the district court entered on both defense and indemnity is appropriate. Therefore, we request that this court affirm the decision of the district court and affirm the summary judgment granted on behalf of national liability. All right. Thank you, counsel. Rebuttal. I think where we get off on the different purposes of Form F is that it is not offered to satisfy the financial responsibility of General 1 statute, which is 601 of the Transportation Code. It's offered to satisfy as proof that the requirements of Chapter 643 are required, and they're completely different. That's why you have a Form F, which then shows that you have met the different requirements in Chapter 643, and there have to be different requirements for motor carriers, because they acquire and lease trucks all the time. Drivers come and go. They may own trucks, but not the trailers. They may lease a trailer for a month or so. That's why Form F has to be different. The next thing is, is a requirement that a motor carrier protect their employees does not translate into what happens if they don't. The statute doesn't say, if you don't do that, then you can't get coverage from any other source whatsoever. In Texas, the philosophy is if you are required to have comp, and the statute also says if you are required to have comp, you just lose some common law defenses. It's not that all of a sudden your contract rights disappeared. Finally, some comments were made about whether this was excluded under the basic policy, because of their exclusion for employment-related injuries. I think the entire dispute there boils down to an interesting burden of proof question. They rely entirely upon an exclusion in the basic policy to say we wouldn't cover it. Well, the problem is that exclusion says it doesn't apply to temporary workers. I think it's pretty clear from Mr. Ochoa's petition that while he alleges he was in scope and course of employment, he doesn't say anything about whether he would qualify as a temporary worker. Not yes or no. We argue that because the law places the burden of proof entirely upon them to show that the exclusion swallows the entire petition, then they have the burden to prove something in the petition to show he wasn't in a temporary worker. They, of course, argue the opposite, that if there's nothing about him being a temporary worker. Didn't he work for your client? Say again? Didn't he work for Riata? Yes. And Riata doesn't know whether he was a temporary worker or not? Again, this is the question is the duty to defend, and that turns on what is alleged, and if it's, and that's why I say it turns on a burden of proof issue. Our position, their position is, our position is that because they rely on exclusion for the duty to defend, which then turns on the pleadings, they have to point to something in the petition that says he's a temporary worker to get out of the duty to defend. Our argument's the opposite. If there's nothing in the petition about him being a temporary worker one way or the other, then they haven't established the exclusion as well as the petition, and therefore they have a duty to defend. And I think I've reached the end of my rebuttal remarks. Are there any more questions? Well, there's still the one I asked that I didn't get an answer to. Well, Your Honor, the question is, there's nothing in the record about that. My only question was, doesn't Riata know whether this worker was a temporary worker? Oh, I'm sure they do. All right. Thank you. I'm just saying this question turns on what was pled, not what the duty to defend. It turns on what is alleged, not what the facts are. The facts will come out at trial, and that will determine whether they would have to indemnify under the basic policy. Thank you, Your Honor. The court will take this matter under advisement. That concludes the case is scheduled for oral argument today, and we are adjourned until nine o'clock tomorrow morning.